UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

| UNITED STATES OF AMERICA | ) | |
|---|---|---|
| | ) | |
| v. | ) | No. 2:18-CR-017 |
| | ) | |
| JASON ABRAHAM CLEMENTS | ) | |

## MEMORANDUM AND ORDER

Through counsel, the defendant moves for compassionate release pursuant to 18 U.S.C. 3582(c)(1)(A)(i). [Doc. 1809]. The United States has responded in opposition to the motion [docs. 1824, 1825, 1826], and the defendant has not replied with the time allowed by this Court's Local Rules. For the reasons that follow, the motion will be denied.

### I. BACKGROUND

In September 2019, this Court sentenced the defendant to a 51-month term of imprisonment for his role in a methamphetamine distribution conspiracy. [Doc. 1259]. This Court ordered concurrent service with certain state matterss and consecutive service with others. [*Id.*]. The defendant is presently incarcerated at FCI Petersburg Low with a projected release date of September 21, 2023. *See* Bureau of Prisons ("BOP"), https://www.bop.gov/inmateloc/ (last visited Apr. 11, 2022).[1]

The defendant moves for compassionate release in light of the COVID-19 pandemic, cardiac and pulmonary disease, diabetes, sleep apnea, and obesity. He also

---

[1] In their filings, the parties reference a projected release date of November 1, 2022. [Doc. 1809, p. 2; doc. 1824, p. 2]. However, as noted, the BOP's current projected release date is September 21, 2023. This discrepancy is presumably due to the defendant recently choosing to withdraw from the BOP's highly beneficial RDAP program. [Doc. 1826].

discusses an ongoing dispute with the BOP regarding credit for 46 days previously spent in custody.

## II. COMPASSIONATE RELEASE

Section 3582(c)(1)(A)(i) of Title 18, United States Code, allows district courts to consider prisoner motions for sentence reduction upon a finding of "extraordinary and compelling reasons." That statute, as amended by the First Step Act of 2018, provides in relevant part:

> [T]he court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
> > (i) extraordinary and compelling reasons warrant such a reduction ... and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission....

18 U.S.C. § 3582(c)(1)(A)(i). Prior to the First Step Act, a motion for compassionate release could only be brought by the BOP Director, not a defendant. *See* 18 U.S.C. § 3582(c)(1)(A) (2017). The First Step Act amended § 3582(c)(1)(A) to allow a defendant to file a motion for compassionate release after first asking the BOP to file such a motion on his behalf. *See, e.g., United States v. Alam*, 960 F.3d 831, 832 (6th Cir. 2020).

The United States Sentencing Commission has promulgated a policy statement regarding compassionate release under § 3582(c), which is found at U.S.S.G. § 1B1.13 and the accompanying application notes. District courts in this circuit previously turned to

U.S.S.G. § 1B1.13 to provide guidance on the "extraordinary and compelling reasons" that may warrant a sentence reduction but are no longer to do so, at least as to compassionate release motions filed by defendants (rather than by the BOP). *See United States v. Jones*, 980 F.3d 1098, 1108 (6th Cir. 2020) ("[H]olding" that guideline 1B1.13 "is not an 'applicable' policy statement when an imprisoned person files a motion for compassionate release."); *accord United States v. Elias*, 984 F.3d 516 (6th Cir. 2021).[2]

In *Jones*, the Sixth Circuit observed that "[d]istrict courts should [still] consider all relevant § 3553(a) factors before rendering a compassionate release decision." 980 F.3d at 1114. Subsequently, in *Elias*, the appellate court "clarified" that "district courts may deny compassionate-release motions when any of the three prerequisites listed in § 3582(c)(1)(A) is lacking and do not need to address the others." 984 F.3d at 519.

### A. Exhaustion

The defendant has previously submitted a compassionate release request to the BOP, and more than 30 days passed between the warden's receipt of that request and the filing of the instant motion. [Doc. 1809, Ex. A]. The United States disputes whether the defendant has presented all of his claims to the BOP but concedes that this Court nonetheless has jurisdiction to deny the instant motion.

### B. Merits

The defendant argues that his risk of becoming severely ill from COVID-19 is heightened by his numerous health issues, notwithstanding the fact that he is fully

---

[2] The parties in this case have not addressed any guideline policy statement other than § 1B1.13.

3

vaccinated against the virus. He also complains that the BOP has wrongly denied him 46 days of prior custody credit.

As to the defendant's credit dispute, this Court is not the entity tasked with computing prisoners' sentences. That entity is the BOP. The defendant's motion makes clear that he is aware of how to litigate that issue with the BOP in his district of confinement if necessary. [Doc. 1809, p. 5]. This Court will not address the issue further.

At the defendant's prison, there are currently one inmate and no staff positive for COVID-19, with 188 inmates and 61 staff having recovered, and no inmate or staff fatalities. *See* Bureau of Prisons, https://www.bop.gov/coronavirus/ (last visited Apr. 11, 2022). These numbers are historically significant, but outside the prison setting our nation remains in an ongoing crisis in terms of COVID diagnoses, variants, hospitalizations, and deaths. Further, the COVID-19 pandemic cannot alone justify compassionate release. *See, e.g., United States v. Shah*, No. 16-20457, 2020 WL 1934930, at *2 (E.D. Mich. April 22, 2020) ("[S]peculation as to whether COVID-19 will spread through Defendant's detention facility . . . , whether Defendant will contract COVID-19, and whether he will develop serious complications, does not justify the extreme remedy of compassionate release."); *see also United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020) ("[T]he mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release[.]").

Additionally, at the defendant's prison complex 475 staff and 2,419 inmates have now been fully vaccinated. *See* Bureau of Prisons, https://www.bop.gov/coronavirus/ (last visited Apr. 11, 2022). The defendant is one of those 2,419 inmates, and he received a

4

booster shot in December 2021. [Doc. 1809, Ex. K; doc. 1825].

The medical record confirms that the defendant has been diagnosed with hypertension, COPD, diabetes, and sleep apnea. [*Id.*]. The BOP provides him with care and medication for these conditions. [*Id.*]. The defendant is also obese. [*Id.*]. He is noncompliant with counseling and recommendations regarding that condition. [Doc. 1809, Ex. K, p. 46, 48; doc. 1826, p. 9].

Obesity, COPD, diabetes, and hypertension are all conditions which "can" increase the risk of severe illness from COVID-19. *See* People with Certain Medical Conditions, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited Apr. 11, 2022). However, as noted, the defendant is now fully vaccinated against COVID-19. The Sixth Circuit Court of Appeals has held that, "even recognizing the purported seriousness of his condition," a defendant's

> access to the COVID-19 vaccine substantially undermines his request for a sentence reduction. To that end, we agree with the Seventh Circuit that a defendant's incarceration during the COVID-19 pandemic—when the defendant has access to the COVID-19 vaccine—does not present an "extraordinary and compelling reason" warranting a sentence reduction. *United States v. Broadfield*, 5 F.4th 801, 803 (7th Cir. 2021) (Easterbrook, J.). After all, with access to the vaccine, an inmate largely faces the same risk from COVID-19 as those who are not incarcerated. To be sure, inmates in some respects face social distancing challenges distinct from those of the general public (although perhaps not entirely unlike students in dorm rooms, individuals in medical and assisted care facilities, and even residents of densely occupied apartment complexes). But to the extent prisons do offer some unique challenges, the vaccine now significantly reduces the risks associated with COVID-19. And at this intersection of law and science, we find wisdom in Judge Easterbrook's assessment that "for people living in close quarters, vaccines offer relief far more effective than a judicial order." *Id.*

*See United States v. Lemons*, 15 F.4th 747, 751 (6th Cir. 2021).

Subsequently, the Sixth Circuit issued its published ruling in *United States v. Traylor*, 16 F.4th 485 (6th Cir. 2021). In *Traylor*, the appellant sought compassionate release "due to her various health ailments (e.g., diabetes, sleep apnea, asthma, obesity, being a recent organ transplant recipient, and use of immunosuppressive therapy)." *Id.* The Sixth Circuit "[a]ccept[ed] the serious nature of Traylor's alleged medical conditions" but nonetheless held that her argument was foreclosed by *Lemons*' "holding that 'a defendant's incarceration during the COVID-19 pandemic—when the defendant has access to the COVID-19 vaccine—does not present an "extraordinary and compelling reason" warranting a sentence reduction.'" *Id.* (citing and quoting *Lemons*).

The instant defendant attempts to distinguish these cases by arguing that his health conditions "prevent him from receiving the same benefit from the vaccine as a healthy person would." [Doc. 1809, p. 7]. Although this Court is neither a physician nor a scientist, the defendant's point may well be true. That does not, however, change the fact that this defendant "largely faces the same risk from COVID-19 as those [similar to him] who are not incarcerated," *Lemons*, 15 F.4th at 751, particularly considering that there is now only one active case of COVID-19 at his prison.

The published holdings in *Lemons* and *Traylor* bind this Court. *See, e.g., Grundy Mining Co. v. Flynn*, 353 F.3d 467, 479 (6th Cir. 2003). In light of those rulings and the evidence presented in this case, the present defendant has not carried his burden of showing that his physical condition is an extraordinary and compelling ground for compassionate release.

Additionally, compassionate release in this case would be inconsistent with the 18 U.S.C. § 3553(a) factors. Pursuant to § 3553(a),

> The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection. The court, in determining the particular sentence to be imposed, shall consider –
>
> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> (2) the need for the sentence imposed—
>
>   (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>
>   (B) to afford adequate deterrence to criminal conduct;
>
>   (C) to protect the public from further crimes of the defendant; and
>
>   (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
>
> (3) the kinds of sentences available;
>
> (4) the kinds of sentence and the sentencing range established for—
>
>   (A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines—
>
>     (i) issued by the Sentencing Commission pursuant to section 994(a)(1) of title 28, United States Code, subject to any amendments made to such guidelines by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28); and
>
>     (ii) that, except as provided in section 3742(g), are in effect on the date the defendant is sentenced; . . .
>
>   . . .

(5) any pertinent policy statement—

(A) issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28, United States Code, subject to any amendments made to such policy statement by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28); and

(B) that, except as provided in section 3742(g), is in effect on the date the defendant is sentenced.

(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

In this case, the defendant distributed significant quantities of methamphetamine, at one point commenting that he had "a zillion sales." [Revised Presentence Investigation Report, doc. 950, ¶ 13]. There are previous convictions for domestic assault, manufacture or possession of a homemade hand grenade, resisting arrest, aggravated criminal trespass, fugitive from justice, and controlled substance offenses. [*Id.*, ¶¶ 45-48]. State probation has been revoked. [*Id.*, ¶ 47]. At the time of sentencing in this case there were numerous state charges pending, including domestic assault, pending in three jurisdictions. [*Id.*, ¶¶ 53-56].

There is a substantial history of substance abuse dating back to age eight. [*Id.*, ¶ 65]. Nonetheless, as noted, the defendant recently chose to withdraw from the BOP's RDAP program. [Doc. 1826]. While in RDAP, he received more than 25 verbal or written negative "pull-ups" for his conduct. [*Id.*]. It appears that he joked about treatment and was not fully invested in the program. [*Id.*]. He was "combative towards staff, contradicting

in his message, lacked willingness to listen, and did not seem interested in addressing his personal behavior." [*Id.*].

The defendant's offense conduct in this case was very serious. Methamphetamine has devastated this region. Distribution of that drug is a serious crime meriting serious punishment. More than 17 months of actual time remains on this defendant's sentence. *See United States v. Kincaid*, 802 F. App'x 187, 188 (6th Cir. 2020) (Several § 3553(a) factors "permit the court to consider the amount of time served in determining whether a sentence modification is appropriate."). Further, the record before this Court makes clear that this defendant is not taking his rehabilitation seriously.

Compassionate release on the facts of this case would not reflect the seriousness of the instant offense and the defendant's broader criminal history, would not promote respect for the law or provide just punishment, and would not afford adequate deterrence or protect the public from future crimes. The pending motion will therefore be denied.

### III. CONCLUSION

As provided herein, the defendant's motion for compassionate release [doc. 1809] is **DENIED**.

**IT IS SO ORDERED.**

ENTER:

s/ Leon Jordan
United States District Judge